The Title IX Office at the University of Missouri suspended a black male graduate student for two years, effectively ending his academic career, because his written expression of romantic feelings for his white female fitness instructor made her uncomfortable. Unlike most of the Title IX disciplinary cases making their way through the federal courts, this case does not involve allegations of sexual assault or even sexual touching. Appellant Jeremy Rowles was disciplined solely based on the things that he wrote and said. This is not to say that speech alone may never be grounds for disciplinary action on college campuses, but this case does not involve any of those narrow categories of expression. Now wait a minute, counsel. As I understand the record, there was physical, physical if part of the discomfort created in that Mr. Rowles knew that and understood it. Yes, your honor, Mr. Rowles went to the classes that A.B. taught at the Student Rec Center. There were instances in which they high-fived each other, but I believe those are the only instances of touching involved. And then the only other presence was an attempt to give her a letter after class on one occasion. You know, before I turn to the specific points on appeal, I do want to identify four facts that are not in dispute in any way. First, Jeremy Rowles was not A.B.'s employer or teacher or otherwise in a position of authority over her. She was the instructor of a fitness class that he took at the Student Rec Center. Second, Jeremy never touched A.B. inappropriately, sexually or otherwise. He never threatened to touch her or insinuated that he would do so without her consent. Three, at no time did A.B. ever allege that she was afraid or threatened by Jeremy Rowles or intimidated by him. Her allegation was that his expression of romantic interest made her uncomfortable. And four, the university imposed much more lenient discipline on two white students found responsible for violating the same rules as Jeremy Rowles. One of those students received no suspension at all. The other was suspended for only six months. And that student was also found responsible for non-consensual sexual intercourse. Did you say it's undisputed they were similarly situated? It's undisputed that they were disciplined for the same rules violations. We don't know the similarly situated facts because the district court denied us our discovery on that issue, which I'll talk about in a little bit. But it is undisputed that the white students received far less discipline as opposed to Jeremy who received two years. There are a lot of issues in this case. And so I think unless the court has specific questions, I'm going to address the discrimination claims first and then turn to the constitutional claims. So the first issue is the district court's dismissal of the Title IX claim. Under existing precedent, there are two ways a student may claim a violation of Title IX in these circumstances. One is the erroneous outcome, which shows that the plaintiff must show particular circumstances suggesting that the student has violated Title IX. Is that your pidging holding or is the U.S. Supreme Court said this is an adequate bifurcation of Title IX? The Supreme Court has not said that, but it has also not said it was not. Neither has our court, right? I mean, it's perfectly appropriate for an attorney to do that, but it's not precedent. That's correct, Your Honor. Those are cases from the Third and Fourth Circuit. One of the things that we saw recently earlier this month in Doe versus the University of Arkansas at Fayetteville was that a male student adequately stated a claim under Title IX when he was, when the Title IX office found that he was not responsible for sexual assault because there was no evidence that the complaining witness had been incapacitated. And then the district court, when that man sued, the district court dismissed his claim. Sorry, I skipped a step there. The appeal, the appellate group at the university found, in fact, that he was responsible for sexual assault because there was evidence that the woman was incapacitated. That man sued in the District Court of Arkansas and this court found that there was essentially substantial evidence supporting that, that finding. This court reversed, and in doing so, it said that the hearing panel's outcome was against the substantial weight of the evidence and also that there were, that the sanctions were contrary to the ordinary disposition of such cases. And finally, that the university was under pressure to find men responsible for sexual assault. That case, like this case, the procedural posture was a motion to dismiss. So in both cases, the court's accept is true, the well-pleaded allegations of the plaintiff. In Mr. Roll's case, Jeremy pleaded that he was found responsible for harassing and stalking, even though he did not make any threats or attempt to intimidate anyone. He alleged that the director of investigations in the Title IX office told him that he looked like someone who might commit sexual assault. He was treated, he alleged that he was treated differently than A.B. procedurally. He was told he had three days to decide whether to accept an informal resolution or request a hearing. And A.B. was not given any such deadline. She was allowed to wait six days before she finally said anything. And she was also told she could have an advisor to help make that decision, which Jeremy was not. And then finally, Jeremy was suspended for two years based on essentially words on the court's speech. So we think that those things taken together adequately plead a case at this stage of the proceeding, that the university violated his rights under Title IX by treating him differently because he's male. The university notes that the, the university argues that the court was right to dismiss this claim because there's no allegation that the curators themselves had actual notice or were deliberately indifference. Relying on the Gebser decision by the U.S. Supreme Court, they contend that Title IX requires actual notice and an opportunity to cure. That is true. But the Supreme Court in Gebser did not say that the curators have to have that, that kind of notice. Rather, it's the person that has been delegated that responsibility to make, to investigate Title IX claims and to remedy the situation. That's the case here. This was the Title IX office that behaved this way. And so I don't think Gebser is applicable in that same sense. Counsel, on the, on the Rule 12B6 ruling, can you, can you, what paragraphs of the complaint in your, in your view create a plausible allegation that bias was a motivating factor? Certainly, Your Honor. I can tell you the, just one moment, I will find it. Essentially, the, I can, I'll be able to find the specific paragraphs here in a moment, but, you know, essentially what this comes down to is that there was evidence that one of the people in the Title IX office, in fact, the Director of Justice, was someone who might commit sexual assault. Of course, she didn't say, I'm saying that because you're a man or because you're black, but it's hard to understand how, how one would interpret the statement, you look like someone who might commit sexual assault as being based on anything other than sex or race. Was she a decision maker, alleged to be? She was alleged to be, she was alleged to be involved in the process in our petition. The defendants point out that she was involved in the decision making, but again, that's irrelevant from the question of whether we sufficiently stated that to survive a motion to dismiss. Moreover, if we're going to look at subsequent discovery to make this decision, there's ample evidence that we came up with in discovery that, in fact, women were treated differently than men. Anything else other than the severity of the, of the sanction? Anything else other than the severity of the sanction? I'm sorry, your honor, I didn't understand the question. That, that would be, that you wouldn't say plausible, but it qualifies as established a plausible allegation of that, that gender bias was a motivating factor in the, in the discipline. We're looking at the, the Doe case. One of the other things that this court said in the Doe case was that the... No, I still want to know that. I'm still worried about the complaint. It just doesn't seem to me from your brief that there's anything in the complaint that basically the severity and, and the comment that, that looks like one of those comments in the workplace in Title VII cases, it doesn't amount to anything. Well, again, this is at the pleading stage, your honor. You know, we, we, Title IX cases are something of a black box. The only people that have any idea of what actually happens and what allegations are made and what findings are made are the universities. Students don't have access to that information other than their own case. But these are, these are hard claims to prove. I mean, this is not, not nearly as easy, not nearly as easy under Title IX as I, as I understand it, than Title VII. That's true. It is more difficult to prove a case... So that means, that means under, under Iqbal and Clombly, you've got a higher bar to clear and you're pleading. That's true, your honor. There is a higher bar. How did, how did this, how did this complaint clear it? Other than, was it Ms. Gallimore who, Ms. Gallimore's random comment? Ms. Gallimore's statement, there was the different way that AB, the complaining witness, was treated from Mr. Rolls. Procedurally, she was not given any time limit to choose whether to have, demand a hearing. He was given only three days. She was told that she could have an advisor make that decision. He was not told that. He did not have an advisor make that decision. Counsel was not involved until after the decision was made in his case. And then, you know, the third issue is the suspension, the length of the suspension. Now you're, those are all on the, I haven't read the complaint. I'm just, I'm just trying to get your help for when I do read the complaint, what paragraphs do I look for as establishing? And I can find that for you, your honor, in a few moments. I don't have the complaint numbers right here, but I do have the record and I'll find out what those are for you. If I can turn then to the, the MHRA claims, these are the State Missouri Human Rights Act claims under, for both sex discrimination and race discrimination. Again, this was at the motion to dismiss stage. The circuit court dismissed both finding that insufficient facts have been pleaded. Under Missouri precedent, a plaintiff in an MHRA case must allege that he's a member of a protected class, that he was discriminated against in the use of a public accommodation, and that his status as a member of that protected class was a contributing factor. This is a much lower standard than the federal court requires. It's not a motivating factor. It's a contributing factor. There's no dispute that Mr. Rawls is black and male. There's no dispute that he was suspended by the university. So the issue for pleading purposes is whether sex, whether he alleged that sex and race contributed to the university's actions. So again, we have the Gallimore statements that he alleges that he looks like someone who might commit sexual assault. The fact that he had been exonerated previously by another, another student complained about him, another white student complained about him, and he'd been exonerated at that time. Nonetheless, the decision maker in this case wrote that he failed to learn from his previous warning regarding conduct with an undergraduate female. The appellate decision maker in this case also wrote she found a discrete common thread with the prior, with his relationship towards undergraduate females. Finally, we alleged a number of more global facts that the University of Missouri has a history of racial discrimination and unfair treatment towards African Americans that minority students are punished more substantially in Title IX cases across the country, that the differential treatment is even more pronounced in cases with ill-defined rules. And we quoted a law professor from the University of Missouri who wrote, it would be a miracle if the university disciplinary procedures did not produce excessively punished, that excessively punished black students. So, you know, all these things taken together, again, we think that we made, satisfied the pleading burden to show that, that, that the MHRA claims were successful. I see I only have about four and a half minutes left. I'd like to reserve my time for rebuttal. Very good. Thank you. Mr. Smith. May it please the court. My name is Antoine Smith. I'm here on behalf of defendant appellees, including the university and the individual defendants. I think the issue in this case is that there's been a failure at multiple stages for the plaintiff to really plead sufficient facts for the causes of action to go forward. And if you look at the Title IX claim, first of all. You said various levels. I assume you're talking about plead facts and then make a showing that defeats summary judgment. Correct, your honor. That's not a plea. Summary judgment is not a pleading exercise. And your honor, if you compare the Doe v. University of Arkansas case to the case here, I think you will see the deficiency that exists. In the Arkansas case, there were a plethora of facts that were pled in the complaint that just don't exist in the same sort of sufficiency in our case. And so in the Arkansas case, for example, Doe alleged that while the disciplinary proceedings were going on, the university faced investigations regarding its past handling of sexual harassment and sexual assault allegations by female students against male students. Doe asserted that there were media outlets and student organizations that were interested in this and were publicizing these allegations. There was an office for civil rights investigation with the U.S. Department of Education that was going on. And the Arkansas legislature had also begun an investigation into claims that the university was failing to properly investigate and adjudicate claims of sexual assault by females against males. So in that case, there's a whole set of allegations that arguably get that case, and as this court determined, get that case past the motion to dismiss stage. That just does not exist in our case. So what's the Arkansas? I can't figure out. I don't see it. It's around September 4th of this year, and judges Erickson and Shepard were both on the panel. And this is a case that plaintiff's counsel was talking about earlier. So again, in our case, there's not that sufficiency of allegations. Plaintiff's counsel keeps mentioning the statement made by Ms. Gallimore that a plaintiff looked like someone who might commit a sexual assault or sexual harassment. And I think Judge Loken, you're right in characterizing that as a random comment or a stray remark in the workplace. But that statement, when you do have an opportunity to read the complaint, a plaintiff is attempting to hang a lot of the case when it comes to the sex discrimination and race discrimination on that statement. And it's really the only statement made by any university official that arguably relates to this case and possibly shows bias. But even if that statement was made, it's a stray remark, and there's nothing on the face of it that indicates that it's targeted or evidences bias of discrimination related to gender or race. There's no terms that refer to male, female, black, white. Those just don't exist. So when you combine with the lack of any other allegations, the district court was right in dismissing the Title IX case as well as the MHRA claims simply for a lack of sufficient pleading. I also wanted to address the motion to compel that was in this case. So plaintiff's counsel served propounded discovery requests upon the university, an interrogatory that asked the university to identify each complaint of sexual harassment or stalking based on sex that was filed with the university's Title IX office during a five-year period and asked for the date of the complaint, the provision of the university regulation, the race and sex of the complaining party, the race and sex of the party accused, the name of the primary investigator, and then whether the violation was substantiated and there were any sanctions. The university objected on a number of those bases but did provide to plaintiff summary information on 60 cases that fell into that category. And the information that was provided included the date of the complaint, the race and sex of the accused, not the race and sex of the complainant, the university stood on those objections, the nature of the violation, and then what if any sanction was there. In the RFP, the plaintiff then asked for documents relating to all 60 of those complaints including investigation reports, the findings, all documents related to that. The university objected on the basis of undue burden because of the time it would take to go through each of those complaints and to send out FERPA notices to any witnesses, to the complainants, to any student that's named in those files, and then also made the argument that there has to be a weighing of the needs of this case in terms of the potential violation of privacy and confidentiality that is really crucial in these sorts of investigations. And when you look at what plaintiff was attempting to get from this discovery information, plaintiff was attempting to find information that would support allegations that there was disparate treatment of African American male students versus white male students. The summary information that was provided did provide the race of the confidential files and the sensitivity that's there for the plaintiff to get what he needed to try to make his case. And that's what the trial court said in ultimately denying the motion to compel. One thing that I think is important in that motion to compel, which included a telephone conference, a briefing that was ordered by the trial judge, in the district court's order, the court said that the proper similarly situated comparator for this case was a white Ph.D. student, or a white graduate student. So Mr. Rolls, the plaintiff in this case, at the time was a 40-year-old Ph.D. student in cultural anthropology. So the court determined that the proper comparator was other white Ph.D. students. But plaintiff made no discovery requests asking for the student status of the accused in these 60 cases, whether they were undergraduates or graduate students. I think you'll see in the briefing also from plaintiff that the plaintiff does not challenge that finding that the trial court made about what was the similarly situated comparator. And additionally, to the extent that plaintiff was trying to elicit information that would support disparate treatment, that really required a statistical analysis. And in the plaintiff's complaint, he does talk about statistics of disparate treatment across the country. But there's never any discussion of those statistics for the University of Missouri. And plaintiff never named an expert. What case says you need a statistical survey? You certainly don't in a Title VII case. Well, Judge, I think in this case, it reflects really... Well, I asked you what case supports your statement. I don't have... If we don't have one, we'll move on. Yeah, I don't have one, Your Honor. But I think the issue goes to what was the needs of the information and proportionality. There was not a need for further information because the plaintiff decided to do nothing with the statistical allegations that he was making in his complaint. A plaintiff has said in his briefing that he asked the court for, or the court should have allowed him to have the files, the investigative reports, and other documents relating to the two white male students who were accused of sexual harassment and stalking on the basis of sex. But that request was never made to the trial court. It was not in the discovery that was propounded to the defendants, and it was not a request that was made in the motion to compel. So plaintiff cannot now try to limit what the scope of what his discovery request was on appeal. The other thing I wanted to... Excuse me. As I recall the discussion about that discovery, wasn't there something in the record where the state said, well, if we're talking about those two records, it's a different thing than the request that's been made, and are we talking about just those two records, and there was never any follow-up to ask for those two sets of records, or am I misremembering the record? That's correct, Your Honor. That's correct. And so that's, again, where I believe that plaintiff dropped the ball and cannot now try to cure that issue on appeal. Going back to sort of the facts of the case, again, here you had a 40-year-old PhD student on one hand and a 20-year-old undergraduate student on the other. Plaintiff's counsel has said that there were not instances of physical touching or physical presence and that this really is a case just about words, whether words that were spoken or words that were put in text messages or Facebook messages or words in a three-page letter that plaintiff gave to, handed to the complainant. But the allegations in the record for summary judgment show that this was not a case that was just about words. There was physical touching that occurred in the class. Mr. Rowles admitted that, acknowledged that he knew that his actions made the complainant uncomfortable and distressed. He specifically acknowledged seeing her quote, run to the restroom in the rec center to avoid being near Mr. Rowles. So all of these show that this isn't just about words, that it's about a physical presence, a physical touching, and that's what ultimately the office sanctioned him for. So the sexual harassment is a verbal, verbal conduct or physical conduct of a sexual nature that is severe or pervasive and objection, and objectively offensive. And so the, the, the university's regulations and then the way it is applied in this case primarily target the conduct that took place and not the words and particularly not the content of the words at issue in this case. That also leads to the question of void for vagueness in this case. Vagueness is really premised on a lack of notice, and Mr. Rowles cannot prove a lack of adequate notice nor prove any arbitrary enforcement. The language that's in the university regulations is comprehensible for ordinary intelligence. It's language that tracks very closely to language that is in both federal law and Missouri law. And then subjectively, again, Mr. Rowles was a 40-year-old PhD student. He also had notice of these types of, of allegations because he had been through a Title IX process before this one. He had gone, there had been a formal complaint made and an investigation that took place, and the allegations in that case were that he, while he was alone with one of his undergraduate students when he was a graduate TA, that he made comments suggesting sexual favors in return for grades, and the student felt uncomfortable and also... I thought our case law following the Supreme Court is that you can't challenge his void for vagueness, can't do a facial challenge unless your conduct fell within, if your conduct fell within the obviously prohibitive range, reasonably prohibitive range of conduct. Right. What more needs to be said on the vagueness issue? Okay, Your Honor, I will move on. No, no, wait a minute. No, I'm asking, am I not recalling correctly? I thought that's what Greenard and that line of cases was all about. Vagueness is a very disfavored inquiry if, unless the plaintiff can legitimately show he or she is outside the range of reasonably prohibited conduct. Right, and in this case, the plaintiff cannot demonstrate that. I didn't see that argument in your brief. I wondered if I was extrapolating from non-relevant sources like straight First Amendment retaliation cases. And on the First Amendment retaliation, I think the important issues there, again, are the question of speech versus conduct. In this case, there was an entire course of conduct based over several months of conduct that Mr. Rolls showed towards AB. He attended classes that she taught. He was staring at her, waiting after class for her, standing near her and high fives, made her run and hide in the bathroom. The sanction that he faced was about that conduct and was not retaliation for any First Amendment rights. In those cases, there needs to be also a connection between animus. There must be some retaliatory motive that's a but-for cause for the retaliation. And plaintiff has not pleaded any facts that would support that. Additionally, the individual defendants are entitled to qualified immunity. And there's been no particularized showing that a reasonable official in the Title IX office would understand that the sanction that was being imposed violates a constitutional right, again, because speech is not implicated in this case. It was about verbal and physical conduct. And then when it relates to the Title VI case and the MHR cases, I again would go back to the issue that there's just simply a lack of facts pleaded and a lack of facts for summary judgment that would support a plaintiff's claim. And I thank you for your time, your honors. Thank you, counsel. Mr. Hurth for rebuttal. The opposing counsel has opened up for a comment on rebuttal. The motion could compel void for vagueness and qualified immunity issues. Yeah, so I think the motion to compel is particularly important here also with regard to the Title VI case, which is really what the motion to compel was about. Mr. Smith is correct that about what we asked for initially was a number of items about specific cases who had been students that had been charged with conduct similar to Mr. Rolls. The university came up with 60 such cases. We also asked for the files, the complaints, the investigative files, and the findings for those 60 cases. Through the course of the oral argument or the phone comments we had and then the subsequent briefing, we expressed that we were rules violations. That was a given take about whatever the court thought was proportional we would be willing to take. Counsel suggested we didn't follow up after the ruling, but the ruling was issued after the close of discovery. So there was no opportunity to follow up. Once we got the ruling on the motion to compel, discovery was over. We couldn't ask anything different at that point. I think the reason that this information is particularly important is when you look at the burden shifting analysis that's done in Title VI cases, this court has said that you follow the same burden shifting that you do in a Title VII case under the McDonald v. Green case. Under that burden shifting, the burden is on the plaintiff initially to plead a prima facie case of race discrimination. Here we did so. There was a member of the protected class. He suffered an adverse action. He was qualified to continue his education. There's no dispute about those three facts. The only issue is whether he was treated differently than similarly situated students. We showed that there were only of the 60 claims that the university identified, there were only three claims in which the student was found responsible for both stalking and sexual harassment. Two of those students were white. One was black. Of those three students, it's impossible to say that Mr. Rawls was not treated differently. He was suspended for two years, originally four years, and then reduced to two. The other two students received no suspension and a six-month suspension. The six-month suspension was a student who was actually found responsible also for sexual assault. So what we showed a prima facie case is that Mr. Rawls, the black student, was treated much more harshly than the two white students. At that point, the burden shifts to the university to show some legitimate non-discriminatory reason for treating them differently. They have never done that. There's been no evidence provided. That's why we asked for this information about the specifics of the case. It was their burden to say, well, Mr. Rawls was treated differently for some reason other than his race. They have never done that. The burden should never have even shifted back to the plaintiff to show pretext. The information that we asked for in these other cases was, what did those students do that warranted such a lesser punishment than Jeremy? The council represents the district court that we had all the information we needed to determine that. But in the depositions of all the defendants, none of them could tell me what Mr. Rawls did differently to warrant a different amount of punishment. So I think that under the burden shifting analysis, the burden never shifted back to show pretext and summary judgment should have been denied. There was discussion about that we had to show a statistical analysis. There is no such requirement. As Judge Logan pointed out, that's not a requirement. What we showed was two students who were treated differently. And in discrimination cases, you often have to rely on indirect evidence. Most defendants are savvy enough not to say I'm discriminating against you on the basis of race. So you have to look at indirect evidence. And here we had indirect evidence that the white students were treated much differently. Finally, with regard to the allegation that this case is not just about words, if you look at what the, I see I'm out of time. If I could just finish my sentence. If you look at what the university says Mr. Rawls did, half of those bullet points are speech. And they involve direct quotes from Mr. Rawls. The only non-speech things is a high five and attending class, which resulted in a two-year sentence. All right, Counselor, we're way over time. Thank you, Your Honor. The case has been thoroughly briefed and argued, and I'll take it under advisement.